THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| RONALD CALDWELL, SR., INDIVIDUALLY AND BLANCHE BRADLEY, INDIVIDUALLY, AND ON BEHALF OF RONALD LAWAYNE CADWELL, JR., DECEASED<br>*Plaintiffs* | * * * * * * * * * | |
| v. | * * | Civil Action No. |
| STATE OF LOUISIANA THROUGH THE BOARD OF SUPERVISORS OF NORTHWESTERN STATE UNIVERSITY, BRAD LAIRD, INDIVIDUALLY, AND IN HIS CAPACITY AS AN EMPLOYEE OF NORTHWESTERN STATE UNIVERSITY, CAMPUS ADVANTAGE, INC., AND ITS INSURANCE COMPANY, XYZ INSURANCE COMPANY<br>*Defendants* | * * * * * * * * * * * * * * | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiffs Ronald Caldwell, Sr., Individually, and Blanche Bradley, Individually, and on behalf of Ronald LaWayne Caldwell, Jr., deceased, who respectfully submits this Original Complaint and avers the following:

### I. INTRODUCTION

The untimely murder of Northwestern State University ("NSU") student athlete, Ronnie Caldwell, Jr., ("Ronnie") has garnered national media attention and prompted both anguish and outrage amongst parents and students alike.

The fateful date of October 12, 2023 will forever be the worse day of Plaintiffs Ronald Caldwell, Sr. and Blanche Bradley's lives. On that tragic day, their beloved son, Ronnie was violently murdered while he was at The Quad Apartment Complex ("The Quad") located at 3800 University Parkway, Natchitoches, Louisiana 71457. At the time of his murder, Ronnie was an exceptional student and adored member of the Northwestern State University ("NSU") football team.

Ronald Caldwell, Sr. and Blanche Bradley, sent their son to NSU to receive an education. They entrusted Ronnie to his football coach, Brad Laird ("Coach Laird"), to ensure his care, protection, and safety. Instead of listening to and heeding Ronnie's cries for help to move away from his violent roommate, NSU and Coach Laird failed one of its students and star athletes. Ultimately, their failure cost Ronnie his life.

## II. PARTIES

1. Plaintiffs Ronald Caldwell, Sr. and Blanche Bradley are of full age of majority, domiciled in Travis County, Texas, and are citizens of the State of Texas.

2. Plaintiffs are the natural father and mother, respectively, of Ronnie Caldwell, Jr., deceased. Ronnie Caldwell Jr. was never married, and he did not have any children, natural or adopted.

3. As the surviving parents of Ronnie Caldwell, Jr., Plaintiffs have the right to bring survival claims for injuries to him, as described herein, pursuant to La. Civ. Code. Article 2315.1 and federal common law, wrongful death claims to recover damages sustained as a result of his death, pursuant to La. Civ. Code art. 2315.2 and federal common law.

4. Defendant Board of Supervisors of Northwestern State University is a public constitutional corporation organized and existing under the laws of the State of Louisiana to operate,

manage, and control the Northwestern State University public university system, including its campus in Natchitoches, Louisiana. Defendant Board of Supervisors of Northwestern State University should be served through the Office of The Attorney General, Jeff Landry, 1885 N. 3rd Street, Baton Rouge, Louisiana 70802.

5. Defendant Brad Laird is of full age and majority and, at all relevant times, was a citizen of the State of Louisiana, domiciled in Natchitoches Parish, Louisiana. At all relevant times that is the subject of this lawsuit, Defendant Brad Laird was acting individually and also as an employee of Northwestern State University. Defendant Braid Laird should be served through the Office of The Attorney General, Jeff Landry, 1885 N. 3rd Street, Baton Rouge, Louisiana 70802.

6. The Quad Apartment Complex by and through its owners/operators, Campus Advantage, Inc., a domestic corporation authorized to do and doing business in the State of Louisiana. Campus Advantage, Inc. is domiciled in the State of Texas and can be served through its registered agent CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.

7. XYZ Insurance Company is believed to have issued a policy of general liability insurance to Campus Advantage, Inc. for the allegations herein, which occurred in a series of events, the occurrences as set out below. Plaintiffs reserve the right to amend their pleadings to properly name the insurance company to conform to evidence procured through the discovery process.

### III.  JURISDICTION

8. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a) in that the matter in controversy exceeds the sum of $75,000.00 and the parties are citizens of different states.

## IV. VENUE

9. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(a) in that this action is founded on diversity of citizenship and is brought in the judicial district where one of the defendants reside.

10. Moreover, Defendant Northwestern State University ("NSU") is under the jurisdiction, control, and authority of the Board of Supervisors, University of Louisiana System. The Board of Supervisors, University of Louisiana System is under the jurisdiction, control, and authority of the State of Louisiana.

## V. FACTUAL BACKGROUND

11. Before his premature death, Ronald Lawayne Caldwell, Jr. was a respectable young man with a bright future ahead. Both on and off the football field, Ronnie's voice was heard throughout the locker room and throughout NSU's campus.

12. Ronnie was talented and his dedication to the community was truly inspiring. During the summer, he would spend the summer coaching a local youth baseball team, teaching those children the values of competition and sportsmanship.

13. Ronnie was born to Ronald Caldwell, Sr. and Branch Bradley on November 19, 2001. He received his education in Elgin, Pflugerville and Cedar Park Independent School Districts.

14. While at Cedar Park High School, Ronnie was a member of the wrestling and football teams. Ronnie was ranked first in his district for three years in football, and third in the State for wrestling.

15. Ronnie was a strong student. He matriculated from Cedar Park High School in 2020 and went on to continue his education at Tyler Junior College in Tyler, Texas, where he was awarded a football scholarship.

16. Ronnie was also an integral part of his family. He spent a lot of time with his mom and dad helping them with household tasks, trips to the doctor, grocery store, lawn maintenance, and often told them that he would take care of them once he made it to the NFL.

17. Ronnie transferred to Northwestern State University ("NSU") in Natchitoches, Louisiana with a full scholarship to play football. He was so excited to make his football mark at a big school.

18. In 2022, Ronnie played Safety for the NSU Demons and appeared in all eleven (11) games, starting in ten (10) of them. For the 2022 football season, Ronnie finished seventh on the team in tackles.

19. Shortly thereafter, Ronnie was injured while playing football. Because Ronnie loved football so much, he traveled with his team and was instrumental in assisting the Defensive Coach in calling plays.

20. Ronnie's football injury did not stop him from excelling at school. As a business major, Ronnie hoped to work with his father in his mechanic and restoration business – but he really had ambitions of playing for the NFL.

21. In 2022, Ronnie was named to the Southland Conference Commissioners Fall Honor Roll, which honors student-athletes who record at least a 3.0 grade point average during their semester of competition.

22. When Ronnie first transferred to NSU, he lived in The Quad Apartment Complex with a fellow NSU football teammate.

23. After mold was discovered in his apartment, Ronnie was moved away from his original football teammate and roommate and relocated to a new apartment within the same complex.

24. In his transfer to the new apartment, The Quad Apartment Complex placed Ronnie with a new roommate, who was a non-university non-college student.

25. Ronnie and his new roommate were not a good match. During their short time period living together, they had a series of verbal altercations.

26. On October 9, 2023, Ronnie's new roommate pulled a gun on him during an altercation.

27. Ronnie immediately called his father, Ronald Caldwell, Sr. ("Ronald"), and told him about the incident.

28. That same day, October 9, 2023, Ronald sent a text to NSU Head Football Coach Brad Laird ("Coach Laird") alerting him that he needed help and that Ronnie's roommate had pulled a gun on him.

29. Coach Laird replied with a phone call assuring Ronald that he would take expedient action and move Ronnie to a safe location immediately.

30. On October 12, 2023, three (3) days later, Ronald received his next call from Coach Laird at 2:07am informing him that Ronnie had been murdered.

### VI. LAW & ARGUMENT

*Count 1 –*
*Premises Liability as to The Quad Apartment Complex by and through*
*Campus Advantage, Inc.*

31. Plaintiffs incorporate by reference each and every paragraph of the facts and allegations stated in this Original Complaint as if fully pleaded at length herein.

32. Ronnie Caldwell Jr.'s injury and death were of such a nature that Defendant Campus Advantage, Inc., as the owners and/or managers of The Quad Apartment Complex, should have reasonably anticipated them.

33. Defendant Campus Advantage, Inc. had a duty to warn of or to make safe any hidden dangers and a duty not to cause injury through gross negligence by tolerating frequent violent criminal activity.

34. At a minimum, Defendant Campus Advantage, Inc. owed a duty not to intentionally, willfully, or through gross negligence cause injury to Ronnie Caldwell, Jr.

35. Defendant Campus Advantage, Inc. breached its duty to Ronnie Caldwell, Jr. by (1) failing to maintain the apartment complex in a safe condition; (2) failing to adequately monitor the apartment complex; (3) tolerating individuals who committed criminal acts inside the apartment complex; (4) failing to engage in reasonable physical security measures (e.g., guards, perimeter gates, security systems/cameras, etc.) to prevent crime from occurring inside the apartment complex; and/or (5) failing to take any meaningful steps to deter crime or to secure the apartment complex.

36. Upon information and belief, at the time of Ronnie Caldwell, Jr.'s death, the entry gate was broken and not monitored, and there were no security guards on the premises.

### Count 2 –
### Survival and Wrongful Death
### Negligence under Louisiana State Law as to Each Named Defendant

37. Plaintiffs incorporate by reference each and every paragraph of the facts and allegations stated in this Original Complaint as if fully pleaded at length herein.

38. Defendants are hereby liable unto Plaintiffs for negligence for their failure to act as follows:

   a. Failure to maintain adequate safety precautions to prevent a risk of harm to Ronnie Caldwell Jr. and other similarly situated persons;

    b.     Failure to have proper safety measures and security procedures to prevent the risk of harm Ronnie Caldwell, Jr.;

    c.     Failure to have proper measures in place to prevent injurious acts by non-residents or non-students at Northwestern State University;

    d.     Failure to properly enforce safety and security measures to prevent risks of harm to Ronnie Caldwell, Jr.

    e.     Failure to have proper staff on premises to prevent injuries to Ronnie Caldwell, Jr. from other students and/or non-students on the premises;

    f.     Failure to provide adequate security in light of prior violent criminal activity occurring at The Quad Apartment Complex; and

    g.     Any other acts of negligence as may be proven at the trial of this matter.

39. Because of the known prior criminal activity afoot at The Quad Apartment Complex, Ronnie Caldwell Jr.'s death was a foreseeable act.

40. As a direct and proximate result of Defendant's negligent actions and inaction, Ronnie endured great physical and mental pain and suffering until he died, and his surviving parents have suffered and will suffer grief, loss of love, affection, companionship, comfort, services, and support.

## Count 3 –
### Vicarious Liability as to State of Louisiana through the Board of Supervisors of Northwestern State University on behalf of Brad Laird, in his capacity as an employee of Northwestern State University

41. Plaintiffs incorporate by reference each and every paragraph of the facts and allegations stated in this Original Complaint as if fully pleaded at length herein.

42. At all times during the subject of this lawsuit, Defendant, Brad Laird, was acting in his capacity as an employee of Northwestern State University.

43. Therefore, the State of Louisiana through the Board of Supervisors of Northwestern State University are liable for his negligent actions and inaction that led to the death of Ronnie Caldwell, Jr.

## VII.   DAMAGES

44. Plaintiff's Ronald Caldwell, Sr., and Blanche Bradley request that the following damages be considered separately and individually for the purpose of determining the sum of money that would reasonably compensate them for:

   a.  the mental anguish that they each suffered in the past and will continue to suffer in the future as a result of the death of their son, Ronnie Caldwell, Jr.
   b.  the pecuniary loss resulting from the death of Ronnie Caldwell, Jr., including loss of care, maintenance, support, services, advice, counsel and contributions of pecuniary value that each of them would, in all reasonable probability, have received from Ronnie Caldwell, Jr. during his lifetime;
   c.  the loss of household services that they each suffered in the past and will continue to suffer in the future as a result of the death of her son, Ronnie Caldwell Jr.;
   d.  the loss of inheritance that each of them would, in all reasonable probability, would have received from Ronnie Caldwell Jr.;
   e.  the loss of companionship and society that each of them has suffered in the past and will continue to suffer in the future as a result of the death of their son, Ronnie Caldwell, Jr.;
   f.  the loss of consortium, including the right to love, affection, solace, comfort, emotional support and happiness that each of them have suffered in the past and will continue to suffer in the future as a result of the death of their son, Ronnie Caldwell Jr;
   g.  the funeral expenses they incurred as a result of the death of their son, Ronnie Caldwell, Jr.

45. Defendants' conduct, when viewed from the standpoint of the actors at the time of the occurrences that form the basis of this lawsuit, involved an extreme degree of risk, considering the probability and magnitude of harm to others.

46. Furthermore, Defendants' conduct illustrates not only an attitude of conscious indifference for the rights, safety and welfare of others, but also shows Defendants' actual and subjective awareness of the dangers of such conduct.

47. Nevertheless, Defendants proceeded with a conscious. indifference to the rights, safety or welfare of others, including Plaintiffs. Therefore, Defendants are liable for exemplary/punitive damages.

## VIII.  JURY DEMAND

Plaintiff requests a trial by jury.

## IX.  PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff's Ronald Caldwell, Sr., individually, and Blanche Bradley, individually and on behalf of Ronnie Caldwell Jr., deceased, prays that a judgment be entered against Defendants, together with interest on the judgment at the legal rate, prejudgment interest, costs of court and for other relief, both in law and in equity, to which Plaintiff's may be justly entitled.

Respectfully submitted,

**DANIEL WILLIAMS & ASSOCIATES PLLC**

*/s/ Helen Daniel*
Helen Daniel (La. Bar Roll No. 31689)
h.daniel@danielwilliamslaw.com
Kathryn Williams (*pro hac vice pending*)
k.williams@danielwilliamslaw.com
2201 Hermann Drive
Houston, Texas 77004
Telephone:    (713)229-9997
Facsimile:    (281)501-6777
-and-

THE COX PRADIA LAW FIRM, PLLC
Jonathan Cox (*pro hac vice pending*)
jhc@coxpradialaw.com
Troy Pradia (*pro hac vice pending*)
tjp@coxpradialaw.com
2402 Rosedale Street
Houston, Texas 77004
Telephone:    (713)752-2300
Facsimile:    (713)752-2812
ATTORNEYS FOR PLAINTIFFS